No. 3248

Second Circuit

—

## MEARES v. DIXIE CREAMERIES, INCORPORATED

—

(November 8, 1928. Opinion and Decree.)

—

Craig, Bolin and Magee, of Shreveport, and A. S. Drew, of Minden, attorneys for plaintiff, appellee.

Blanchard, Goldstein and Walker, of Shreveport, attorneys for defendant, appellant.

ODOM, J. The plaintiff in this suit was in charge of an ice truck, delivering ice on one of the streets in South Highlands, City of Shreveport, and, while standing on the ground at the rear end of his truck, another truck, owned by defendant and operated by one of its employees, ran against him, knocked him against the ice truck, which resulted in the breaking of both his legs just below the hips, and inflicted other injuries upon him. This was on August 19, 1926.

The case was tried before a jury in December, 1927, resulting in a verdict and judgment in favor of the plaintiff for $20,-000.00; from this verdict and judgment, the defendant has appealed.

The defendant admits liability, but contends that the amount awarded is excessive; while, on the other hand, the plaintiff moved in this Court to have the judgment amended by increasing the award.

## OPINION

The testimony shows that plaintiff was caught between the two trucks; that both legs were crushed and broken just below the hips; that he was bruised about the face and head and at many other places on the body; and that his urethra was ruptured.

Plaintiff was carried to a sanitarium, where he remained under the care of physicians and nurses for about seven months, after which he was sent to his home, where he remained in bed about four weeks. For the first few days after the accident, plaintiff was in a precarious condition, the physicians being doubtful as to his recovery. When he rallied from the shock, the physicians set his legs. For the first four or five months, there was but little, if any, improvement in the condition of his legs, the fractures not healing as expected, and the physicians suspected that the patient was suffering from tuberculosis, so he was

finally removed to the roof of the sanitarium, which is specially prepared and equipped for the care and treatment of tubercular patients. Plaintiffs' legs showed considerable improvement and the fractures began to heal rapidly. During the seven months that plaintiff was in the sanitarium, he underwent some five or six operations, and, the physicians and nurses say, he suffered greatly at times.

As a result of his injuries, plaintiff was at the time of the trial in December, 1927, about a year and four months after the injury, able to walk fairly well without the use of crutches, although it seems that he carried them along to be used in case he needed them. Plaintiff testified that he was able to drive an automobile over rough roads; to climb a flight of stairs, although he said in doing so he had to catch hold of the railing to brace himself; to walk very well on level ground, but was unable to do manual labor of any kind, and that he still suffered some pain, especially from his right leg. The testimony shows that at the time of the trial, plaintiff's nervous system was somewhat below par, the physicians attributing that condition to the weakened condition of the body, resulting from the injury and his long confinement; but they thought this nervous condition would pass away. It is shown that his knee and hip joints are somewhat stiff, with one leg slightly shorter than the other. At the time of the trial, there was a sore on one of plaintiff's legs which was discharging. Dr. Abramson attributed that condition to the fact, as he thought, that there was a small fragment of bone working towards the surface, but he said that condition should be relieved within sixty or ninety days. The testimony shows that, as a result of the rupture to the urethra, there remained a scar which restricted the flow of the urine, and that it became necessary to dilate the urethra every four or five days by inserting a steel sound. Dr. Rougon testified that this condition was permanent and that it would probably be necessary to dilate the urethra at intervals of a few months throughout plaintiff's life.

The plaintiff also claims that, as a result of this accident, he has been rendered impotent, but he failed to make satisfactory proof of that fact.

We are satisfied from the testimony that plaintiff will suffer considerable inconvenience and partial disability to do manual labor, due to the slight stiffness of his joints; and his earning capacity will be diminished to some extent. But he is, by no means, wholly incapacitated. There is no doubt that, as a result of the accident, the plaintiff has undergone great pain and suffering.

We are indebted to counsel on both sides for their industry in collating cases showing amounts awarded by our Supreme Court in personal injury suits. We have carefully noted them all. It would subserve no useful purpose to cite them here.

Our conclusion is that for plaintiff's suffering and injuries which he has sustained, he is entitled to an award of twelve thousand ($12,000.00) dollars. This, we think, is in line with amounts awarded in other cases for similar injuries and suffering.

The testimony shows that the plaintiff incurred expenses in the way of hospital and medical bills amounting to $4,073.98. He should recover this amount, in addition to the $12,000.00, as above stated.

Counsel for plaintiff contend that he should also recover the amount of compensation which his employer paid him during disability, in addition to the award for pain, suffering and injuries. We do

not think so, but think this should be included in the $12,000.00.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to reduce the amount to $16,073.98; and that, as thus amended, it be affirmed, the appellee to pay costs of the appeal.